

**SIGNED this 12th day of March, 2025**

Rachel Ralston Mancl
UNITED STATES BANKRUPTCY JUDGE

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>    RYAN DANIEL BAER,<br><br>        Debtor. | No. 2:24-bk-50085-RRM<br>Chapter 7 |
| VLADIMIR R. KRUGLYAK,<br><br>        Plaintiff,<br><br>vs.<br><br>RYAN DANIEL BAER,<br><br>        Defendant. | No. 2:24-ap-05012-RRM<br>Adversary Proceeding |

# M E M O R A N D U M

APPEARANCES:

| | |
|---|---|
| Vladimir R. Kruglyak<br>1216 Windsor Avenue<br>Bristol, Tennessee 37620<br>*Pro Se* | Charles L. Moffatt IV, Esq.<br>Post Office Box 1115<br>Bristol, Tennessee 37621<br>*Attorney for Defendant* |

**Rachel Ralston Mancl, United States Bankruptcy Judge.** This adversary proceeding involves a state court judgment for damages to plaintiff's rental property. Plaintiff attributes the property damages to a "willful and malicious injury" by defendant such that the debt should be determined nondischargeable under 11 U.S.C. § 523(a)(6). In moving for summary judgment plaintiff asserts the willful and malicious injury is either established by the state court judgment's preclusive effect or by the absence of any genuine dispute as to material facts. Neither argument having established a willful and malicious injury, the motion will be denied.

I.

The complaint commencing this proceeding was filed pro se by plaintiff on May 13, 2024. The complaint sets forth six counts including the § 523(a)(6) claim at Count II. Defendant filed an answer on September 3, 2024, and supplemented his answer on October 8, 2024. On November 14, 2024, plaintiff filed the present motion requesting "an Order granting Summary Judgment on the issue of nondischargeablity and ordering Defendant Ryan Baer to implement and follow a structured repayment plan for the civil Judgment debt owed to Plaintiff." According to plaintiff, "[t]he civil judgment stems from Defendant's willful and malicious property damage, making it nondischargeable [under 11 U.S.C. § 523(a)(6)]." On January 24, 2025, plaintiff filed a statement of material facts that he contends are undisputed and a motion in limine asking the court to limit the materials the court will consider in reviewing plaintiff's summary judgment motion. On February 14, 2025, defendant filed a response in opposition to plaintiff's summary judgment motion. The response was supported by defendant's affidavit and certified copies of the state court judgment and itemization of damages. Plaintiff filed a reply on February 21, 2025, in which he "emphasizes that no genuine dispute of material fact exists to preclude judgment as a matter of law under 11 U.S.C. § 523(a)(6)."

II.

This dispute arose from defendant's rental of a room from plaintiff in 2016 that led to plaintiff's filing of a detainer action in the General Sessions Court for Sullivan County, at Bristol, Tennessee. With respect to that action in which plaintiff sought possession of the rental property,

2

rent, damages, and court costs, plaintiff states that "[o]n September 29, 2016, [he] obtained judgment against Defendant in the amount of $7,161.70 for damages arising from Defendant's willful and malicious actions causing harm to Plaintiff's property." Defendant counters that "the initial judgment for Plaintiff on September 29, 2019 [sic] was for $540.00 in rent due and owing plus interest and court costs." Defendant states that "Plaintiff's claim for damages was actually issued on September 1, 2017 in the amount of $6,874.11, and that [the] judgment for property damages did not include a claim or a judicial finding of willful and malicious injury to Plaintiff's real estate by Defendant Baer." Certified copies of plaintiff's state court judgment and his separately itemized request for damages bear this out. The state court judgment shows that the hearing on plaintiff's detainer action was bifurcated. At the first hearing on September 29, 2016, plaintiff was awarded a default judgment for possession, $540 for "rent now owing and unpaid," post-judgment interest, and court costs. At the second hearing on September 1, 2017, a default judgment of $6,874 "for damages" to the property plus court costs was awarded to plaintiff. The amount of second award corresponds with the total on plaintiff's itemized request for "recovery of damages that defendant and/or his guests have caused at the property known as 1216 Windsor Avenue, Bristol TN 37620 from August 17, 2016 to October 9, 2016." Plaintiff's itemization totaling $6,874 is broken down by $5,344 to repair damage to drywall and hardwood floor, $95 to repair damage to sewer system, $210 for a cleaning fee, and $1,225 for "loss of personal belongings" consisting of two coats, a dress, five pair of shoes, and four pair of jeans. The general sessions court did not make a finding of fact as to defendant's intent to cause damage to plaintiff's rental property.

As a preliminary matter, defendant argues this court should not consider the state court judgment because it is void. Specifically, defendant states:

> Plaintiff's notice to the Defendant of the hearing on September 1, 2017[,] was through a defective notice by publication which the Plaintiff placed in "craigslist community news" section of the craigslist internet site on or about March 5, 2017 rather than in a newspaper as required by T.C.A. §21-1-204, and without the required affidavit of publication or production of newspaper notice.

There is no evidence defendant sought relief based on the purportedly defective notice in the state court that awarded the judgment, and the *Rooker-Feldman* doctrine prohibits this court from

3

providing relief. *See, e.g., Kinney v. Anderson Lumber Co. (In re Kinney)* 3:20-ap-3028-SHB, 2021 WL 161956, at *10 (Bankr. E.D. Tenn. Jan. 13, 2021) (*Rooker-Feldman* doctrine is implicated where state court defendant asserts in bankruptcy court that a defect in the state proceedings invalidated the state judgment.); *see also In re Rifkin*, No. 08-22557, 2010 WL 2521458, at *2 (Bankr. D. Kan. June 18, 2010) ("There is no exception to the *Rooker–Feldman* doctrine applicable … [for a] bankruptcy court to set aside a state court default judgment based upon allegations of improper service of process.").

Instead, "[t]he Full Faith and Credit Act, 28 U.S.C. § 1738, requires a federal court to give the same preclusive effect to a state-court judgment that the judgment would be given in the courts of the state in which the judgment was rendered." *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 898–99 (Bankr. D.N.M. 2016) (citations to courts quoted omitted). In doing so the federal court must refer to the preclusion law of the state in which judgment was rendered. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327, 1332 (1985).

> The preclusive effects of former adjudication are … referred to collectively by most commentators as the doctrine of "res judicata" [which] consist[s] of two preclusion concepts: "issue preclusion" and "claim preclusion." Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided. This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit. Claim preclusion therefore encompasses the law of merger and bar.

*Heyliger v. State Univ. & Cmty. Coll. Sys. of Tennessee*, 126 F.3d 849, 852 (6th Cir. 1997) (quoting *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1, 79 L. Ed. 2d 56 (1984)). Tennessee applies both claim preclusion and issue preclusion to default judgments. *See In re Bursack*, 163 B.R. 302, 306 (Bankr. M.D. Tenn. 1994) (the general rule is default judgments do constitute res judicata for purposes of both claim preclusion and issue preclusion); *Fisher v. Anderson (In re Anderson)*, 520 B.R. 89, 95 (B.A.P. 6th Cir. 2014) ("Tennessee state courts would give preclusive effect to a 'true' default judgment in which the Defendant failed to answer.").

Under Tennessee's claim preclusion doctrine, "[a] final judgment in General Sessions Court bars a subsequent suit in another court on the same subject." *Clay v. Barrington Motor Sales, Inc.*, 832 S.W.2d 33, 34 (Tenn. Ct. App. 1992). In essence, the claim preclusion doctrine gives the state court judgment preclusive effect to establish the existence and amount of the underlying debt. *See, e.g., In re Crespin*, 551 B.R. at 897 (Bankr. D.N.M. 2016) (claim preclusion applies with respect to the claim on the debt in dischargeability proceedings) (citing *Neel v. Neel*, 124 F.3d 198 (Table), 1997 WL 525366 at *3 (6th Cir.1997) (unpublished)) (citing *Comer v. Comer (In re Comer),* 723 F.2d 737, 740 (9th Cir. 1984) (claim preclusion bars the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation)). Consequently, plaintiff's state court judgment is binding on this court as to the extent of the defendant's obligation—both the state court's finding of liability and the judgment amounts awarded. Claim preclusion, however, does not bar a bankruptcy court from considering the dischargeability of the judgment debt. *Id.; see also Brown v. Felsen,* 442 U.S. 127, 134, 99 S. Ct. 2205, 2211 (1979) (Supreme Court refused to allow the principle of res judicata to bar the bankruptcy court from looking beyond the state court judgment to determine whether the debt came within one of the exceptions to discharge.).

Likewise, the issue preclusion doctrine does not bar this court from determining the dischargeability of the state court judgment. The Sixth Circuit analyzed the issue preclusion doctrine in the context of a § 523(a)(6) claim in *Marketgraphics Research Grp., Inc. v. Berge (In re Berge)*, 953 F.3d 907 (6th Cir. 2020). "Issue preclusion prevents a party from relitigating issues of fact or law actually litigated and decided in a prior proceeding." *Id.* at 916. Under Tennessee law "a party is barred from relitigating an issue already decided when: (1) the issues are identical; (2) the issue was actually litigated and decided previously; (3) the judgment in the earlier proceeding has become final …; (4) the party to be estopped was a party to the prior litigation; and (5) the party to be estopped had a full and fair opportunity to litigate the issue." *Id.* at 917 (citing *Mullins v. State*, 294 S.W.3d 529, 535 (Tenn. 2009)). For § 523(a)(6)'s "willful and malicious" requirement to have been actually litigated, the court must have examined the debtor's "subjective intent" to do harm. *Id.*

5

As was the situation in the *Berge* case, here there likewise was no finding by the general sessions court that the defendant "'desired to cause the consequences of his act or believed that the injuries were substantially certain to result from it,' nor are there 'factual allegations in the underlying complaint' to that effect." *Id.*  Specifically, nothing provided from the general sessions court record indicates that defendant's subjective intent to harm the plaintiff or his property was at issue in the state court detainer action.  And there certainly was no reason for the court to consider any intent to harm before granting judgment in connection with breach of the parties' rental agreement. *See, e.g., Cutler v. Lazzara (In re Lazzara)*, 287 B.R. 714, 723-25 (Bankr. N.D. Ill. 2002) (neither first judgment in detainer action for nonpayment of rent nor second one for property damages in detainer action were debts based on willful and malicious conduct). Plaintiff's statement to the contrary that the "judgment for property damage inherently required a finding of intentional misconduct under Tennessee tort law" is incorrect.  Damages may be awarded under breach of contract for repair of rental property to put the injured party back in same position as the party would have been had the breach not occurred. *See, e.g., 495 Kings Stable, LLC v. Pate*, No. W202100742COAR3CV, 2023 WL 2784207, at *9 (Tenn. Ct. App. Apr. 5, 2023).  Because the issue of willful and malicious injury by the defendant to plaintiff or his property was never presented to and litigated before the general sessions court, issue preclusion is of no help to plaintiff.

III.

Alternatively, plaintiff asks that summary judgment be granted on the § 523(a)(6) claim because "there is no genuine issue of material fact that remains to be tried based on the attached responses of Debtor to discovery, and Plaintiff is entitled to Judgment as a matter of law."  Before considering this argument, the court will address plaintiff's motion in limine.  The motion requests an order "[l]imiting the scope of review to the undisputed material facts already presented in Plaintiff's Motion for Summary Judgment" and "[e]xcluding from consideration all discovery responses … [and other undisclosed] extraneous issues or documents … that are irrelevant to the issue of nondischargeability."  It appears that plaintiff desires to limit the court's review to only

6

a portion of the record, specifically those material facts as presented by plaintiff. This is inappropriate.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Fed. R. Bankr. P. 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Browning v. Levy*, 283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2510 (1986)). As movant, plaintiff bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material fact and that plaintiff is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). Plaintiff's motion to limit the court's review of the record would necessarily preclude consideration of defendant's affidavit. For this reason alone, the court will deny plaintiff's motion in limine.

As previously noted, to prevail plaintiff must prove that the judgment debt arises or results from defendant's willful and malicious act intended to do injury. *Steir v. Best (In re Best)*, 109 F. App'x 1, 5 (6th Cir. 2004). "An intentional or deliberate act alone does not constitute willful and malicious conduct under § 523(a)(6)." *Kowalski v. Romano (In re Romano)*, 59 F. App'x 709, 715 n.6 (6th Cir. 2003). A debtor must desire to cause the consequences of his act or believe that the consequences are substantially certain to result from it. *Campbell v. Markowitz (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999). "[A]ssessing whether an injury is 'willful and malicious' under § 523(a)(6) is a two-pronged inquiry." *In re Berge*, 953 F.3d at 916. The court "must analyze independently whether a debtor has willfully, and also maliciously, injured the creditor before rendering a debt non-dischargeable in accordance with § 523(a)(6)." *Id*. "'Willful' conduct, for purposes of § 523(a)(6), requires 'actual intent to cause injury,' 'not merely a deliberate or intentional *act* that leads to injury.'" *Id*. at 915 (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original)). "'Malicious' means in conscious disregard of

7

one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The Sixth Circuit "utilizes only a subjective standard [to measure intent], asking whether the debtor himself was motivated by a desire to inflict injury." *Id.* "The need to assess a debtor's mental state, however, normally means that, for an action brought under § 523(a)(6), the entry of summary judgment in favor of a plaintiff is not appropriate." *Ankney v. McMillen (In re McMillen)*, No. 12-3009, 2012 WL 2150339, *3 (Bankr. N.D. Ohio June 12, 2012). That is because "[d]eterminations concerning a debtor's state of mind require a subjective assessment of the debtor's intentions which often can only be made by the trier-of-fact after it has had the opportunity to assess the credibility and demeanor of witnesses who testify at trial during both direct and cross examination." *Hoffman v. Anstead (In re Anstead)* 436 B.R. 500-01 (Bankr. N.D. Ohio 2010).

Regarding the willful and malicious injury, plaintiff alleges in his complaint

> 11. While residing at the property, Mr. Baer brought unauthorized family tenants to live with him permanently, smoked inside his room unknown substances in violation of nonsmoking policy, and used violence to object to the requests of the owner-landlord and Creditor not to smoke inside and not to bring anyone to live with him in a multi-room shared accommodation for students and travelers.

> 12. During his stay at the property, Mr. Ryan Baer launched with a kitchen knife to threaten the owner-landlord and creditor Vladimir Krnglyak, violently damaged wood floors and walls of the property using heavy furniture (recliner chair with metal base), plugged the toilet with bulk of tissue, causing water flood over the wooden floors and refused to fix damages upon request of the owner.

In his supplemented answer defendant generally denies causing any damage and specifically those damages alleged by plaintiff.

In his affidavit defendant states

> 3. I rented a room from Kruglyak in a house on Windsor Avenue in Bristol, Tennessee in July and August of 2016. There was no written rental agreement between Kruglyak and me. I first met with Kruglyak at the house on 1216 Windsor Avenue, Bristol, Tennessee to inquire about renting a room from him. In my conversation with Kruglyak at that meeting he never inquired of me or made any mention whatsoever about whether any other persons would come to visit with or stay with me or whether I had any criminal record. Kruglyak never asked me about

8

any of those things during our discussion leading up to my renting a room from him.  Kruglyak never stated that he had any rule or policy limiting my ability to have guests in the room, or prohibiting my smoking in the room.

      4.  The room that I rented in Kruglyak's house was on the second floor. There were other rooms on the second floor, including a bathroom and other bedrooms.

      5.  During the time that I occupied my rental room in Kruglyak's house. I exercised visitation rights with my 3 year old minor daughter, who spent the night with me in my room on about 2 weekends.  She only visited a couple of times and when Kruglyak started complaining about her being there I had to make other arrangements to be able to see her.

      6.  During the time that I occupied my rental room in Kruglyak's house, at no time did any of my family members or other persons permanently reside in my room at Kruglyak's house.

      7.  During the time that I occupied my rental room in Kruglyak's house, at no time did I threaten Kruglyak with a kitchen knife.

      8.  During the time that I occupied my rental room in Kruglyak's house, there was another room on the second floor that was rented out to another person. Kruglyak furnished that other room, which was not my rental room, with a reclining chair that had a metal base without any pads, feet or cushions at the bottom.  The bottom of the reclining chair had metal rails in contact with the wood floor with nothing to protect the floor.  That reclining chair did not belong to me.

      9.  On a weekend in August, 2016 when the Bristol Motor Speedway was having a Nascar race, Kruglyak told me that he rented my normal room to some race fans and asked me to move into the room with the reclining chair.

      10.  Sometime shortly after that weekend in August, Kruglyak accused me of damaging the wooden floor of the room with the reclining chair.  I looked at the wood floor and it appeared to me that the metal rails on the bottom of the reclining chair had been sitting directly on the wood floor and scratched the floor.  I told Kruglyak that I did not damage the floor, but that the scratches could be repaired with wood putty, sanding and re-staining.  I deny that I damaged the wood floor, and I absolutely did not cause any damage or injury to the floor or the property intentionally.

      11.  During the time that I occupied my rental room in Kruglyak's house, Kruglyak did not tell me that there was any other property damage alleged caused by me other than the wood floor in the upstairs room of the house.

….

14. During the course of my discussions with Kruglyak, he never accused me of intentionally damaging the floors or any other part of his house.

15. I never made any statement to Kruglyak that I damaged the floors or any other part of his house.

16. I did not damage the wood floors of Kruglyak's house, and I did not intentionally and maliciously damage the wood floors.

17. I did not intentionally and maliciously plug a toilet in Kruglyak's house with toilet paper or otherwise intentionally and maliciously cause the toilet to overflow.

18. I did not throw furniture against the walls in Kruglyak's house or intentionally and maliciously damage any of the walls in Kruglyak's house.

19. At no time did I intend to damage or injure Kruglyak's property, and I deny doing any property damage to Kruglyak's house intentionally and maliciously.

Plaintiff's statement of undisputed material facts is conclusory with respect to any subjective intent by defendant to harm plaintiff, only stating that the judgment debt was "for damages arising from Defendant's willful and malicious actions causing harm to Plaintiff's property." Defendant's response and supporting affidavit rebutting plaintiff's statement of facts set forth genuine disputes as to material facts that plaintiff must establish to prove the judgment debt arises or results from a willful and malicious injury by defendant. Considering the parties' pleadings and defendant's affidavit, the motion for summary judgment must be denied.

IV.

For the foregoing reasons, an order will be entered contemporaneously with the filing of this memorandum opinion denying plaintiff's motions in limine and for summary judgment.

# # #