

**SIGNED this 5th day of June, 2025**

Rachel Ralston Mancl
UNITED STATES BANKRUPTCY JUDGE

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    RYAN DANIEL BAER,<br><br>                Debtor. | No. 2:24-bk-50085-RRM<br>Chapter 7 |
| VLADIMIR R KRUGLYAK,<br><br>    Plaintiff,<br><br>vs.<br><br>RYAN DANIEL BAER,<br><br>    Defendant. | No. 2:24-ap-05012-RRM<br>Adversary Proceeding |

**M E M O R A N D U M**

APPEARANCES:

    Vladimir R. Kruglyak
    1216 Windsor Avenue
    Bristol, Tennessee 37620
    *Pro Se*

**Rachel Ralston Mancl, United States Bankruptcy Judge.** The pro se plaintiff commenced this adversary proceeding by filing a 24-page complaint on May 13, 2024. The six counts of the complaint included claims for dismissal of the bankruptcy case, violation of a criminal statute, injunctive relief, objections to discharge, and determinations of nondischargeability of debt. The debt giving rise to this dispute is a general sessions default judgment of less than $7,500 that arose in connection with defendant's rental of a room from plaintiff in 2016. The court dismissed the complaint when plaintiff failed to appear for trial. Now, citing "Fed. R. Bankr. P. 9023/9024," plaintiff "moves for reconsideration of the Court's Order dismissing his adversary complaint" on the basis that "[t]he dismissal resulted from excusable neglect (no notice of trial/hearing rescheduling)." The motion will be denied for the following reasons.

I.

By order entered March 27, 2025, the court dismissed plaintiff's complaint, stating:

> This adversary proceeding came before the court for trial at 9:00 a.m., on March 27, 2025, pursuant to the scheduling order entered September 24, 2024. The defendant and his attorney were present and ready to proceed. Although the court waited an additional 45 minutes for the plaintiff to arrive, he failed to do so. Accordingly, as a result of plaintiff's failure to appear at trial in prosecution of his complaint filed May 13, 2024, the complaint is dismissed in its entirety.

It was not until May 16, 2025—50 days after dismissal of the complaint—that plaintiff filed the pending motion for reconsideration requesting relief from the dismissal order under Fed. R. Bankr. P. 9023 and 9024.

Plaintiff's request for relief under Fed. R. Bankr. P. 9023 must be denied as untimely. A motion requesting relief from a judgment under Fed. R. Bankr. P. 9023 must be made within 14 days after entry of the judgment. *See* Fed. R. Bankr. P. 9023(b) ("A motion for a new trial or to alter or amend a judgment must be filed within 14 days after the judgment is entered."); *see also Lucas v. Jin Xiu Liu,* No. 1:16-CV-00493, 2017 WL 4018850, at *3 (E.D. Tenn. Sept. 12, 2017) ("A motion for a new trial or to alter or amend a judgment must be filed no later than 14 days after entry of judgment…. The time limits contained in the bankruptcy rules of procedure are to be

strictly enforced."). Because the March 27 dismissal order became final and not subject to appeal 14 days after its entry, relief from the dismissal order under Rule 9023 is unavailable to plaintiff. *Id.* ("Federal Rule of Bankruptcy Procedure 8002 requires an appellant to file its notice of appeal within fourteen days from the entry of judgment.").

Plaintiff's request for relief under Fed. R. Bankr. P. 9024 must be denied because plaintiff has failed to show excusable neglect. Fed. R. Bankr. P. 9024 incorporates Fed. R. Civ. P. 60 with certain exceptions that are not applicable here. Plaintiff specifically relies on Fed. R. Civ. P. 60(b)(1) which provides, *inter alia*, that relief from a final judgment may be granted for excusable neglect.

The entirely of plaintiff's "Legal Argument" for relief under Rule 60(b)(1) is set forth in his motion as follows:

> III. Legal Argument
> A. Excusable Neglect (Rule 60(b)(1))
>> 4. The dismissal order should be vacated because:
>> i. No Notice of Trial Date: The defense counsel requested adjournment due to weather, but Plaintiff received no notice of the new date. *Mullane v. Cent. Hanover Bank & Tr,. Co.*, 339 U.S. 306 (1950).
>> ii. ECF Malfunction: The Court is aware of Plaintiff's ECF notification issues, which courts routinely treat as excusable neglect. *In re Cochener*, 382 B.R. 311 (Bankr. S.D. Tex. 2007).
>> iii. Meritorious Claims: Plaintiff's evidence of asset concealment (Subaru, Honda) and fraud (§ 727(a)(4)) is compelling. *In re Retz*, 606 F.3d 1189 (9th Cir. 2010).

In sum, plaintiff states two reasons he believes the dismissal order should be vacated due to excusable neglect: (1) he was not notified of the trial date; and (2) he experienced an ECF malfunction. Plaintiff's arguments are not supported by the record and do not justify setting aside the dismissal order for excusable neglect.

II.

    A.  <u>The Record.</u>  The court entered an order on September 3, 2024, setting a scheduling conference for September 24, 2024.  Plaintiff appeared and participated at the scheduling conference during which the court set the date and time for the trial along with trial preparatory deadlines.  An order was entered the same day setting forth those deadlines and plainly stating that "[t]he trial of this adversary proceeding will commence on March 27, 2025, at 9:00 a.m., in the bankruptcy courtroom, James H. Quillen United States Courthouse, 220 West Depot Street, Greeneville, Tennessee."

    On January 24, 2025, defendant's attorney filed a motion requesting an extension of the deadline for filing dispositive motions, stating:

> COMES the Defendant Ryan Daniel Baer, by counsel, and moves the Court for an Order granting an extension of the time for filing dispositive motions in this matter. The Court's Order of 9/24/24 set the deadline for filing dispositive motions as January 25, 2025.  Counsel for the Defendant anticipates that a dispositive motion will be filed to assert defenses to some of Plaintiff's claims.  Due to inclement weather and family illness of counsel for the Defendant, counsel for the Defendant has not been able to meet with third parties for in person interviews and preparation of suitable affidavits to file with [sic] in support of the motion.  Counsel for the Defendant requests and [sic] extension of twenty (20) days, or such other amount of time as the Court finds proper, for filing dispositive motions.

An order granting the motion was entered January 27, 2025, which provided:

> This adversary proceeding is before the court on the defendant's motion filed on January 24, 2025, requesting a 20-day extension of the January 25, 2025, deadline for filing dispositive motions set forth in the scheduling order entered September 24, 2024.  The motion is granted and the deadline for filing dispositive motions is extended until February 14, 2025.

The January 27 order did not change the trial date or alter any other trial preparatory deadlines. The January 27 order only extended the deadline for filing dispositive motions.

    Defendant filed a timely motion for partial summary judgment on Count III of plaintiff's complaint.  The court granted the motion on March 5, 2025.  On the same day, but after entry of the order granting partial summary judgment, plaintiff filed an untimely response to the motion prompting the court to enter another order that day stating:

4

> [P]laintiff's response fails to address the legal merits of defendant's motion for summary judgment, that plaintiff has no standing to assert a claim based on an alleged violation of a criminal statute. It was proper to award summary judgment to defendant on this claim, and there is no basis to reconsider the order or otherwise grant plaintiff any relief.

Plaintiff also filed a timely motion seeking partial summary judgment on Count II of his complaint wherein plaintiff asserted that the general sessions default judgment for damages to his rental property was attributable to defendant's "willful and malicious injury" such that the debt should be determined nondischargeable under 11 U.S.C. § 523(a)(6). The court entered an order on March 12, 2025, denying plaintiff's motion. In an accompanying opinion the court concluded that a willful and malicious injury to property was neither established by the preclusive effect of the judgment nor by the absence of any genuine dispute as to material facts.

As noted, the September 24 scheduling order set the adversary proceeding for trial on March 27, 2025, and imposed certain trial preparatory deadlines. One of those deadlines was for the filing of a joint pretrial statement no later than 14 days before trial, which in this case was March 13, 2025. The scheduling order directed that the joint pretrial statement was to include:

> (a) a stipulated list of all admitted or uncontested facts; (b) a brief statement by the plaintiff listing each claim that will be pursued at trial … ; (c) a brief response by the defendant to each such claim listed by the plaintiff … ; and (d) a joint list … setting forth all factual and legal issues to be submitted for decision by the court at trial.

Defendant filed a pretrial statement on the March 13 deadline, but it was not a joint statement. Under Part II of the pretrial statement titled "Plaintiff's Statement of Claims That Will Be Pursued" the following sentence was inserted: "Plaintiff has prepared and will file his separate Statement of Fact and Legal Issues." The clerk's office received and filed plaintiff's pretrial statement—dated March 12, 2025—on March 21, 2025. That plaintiff knew he had to submit a pretrial statement 14 days before trial but did not know the trial would proceed as scheduled 14 days later is difficult to reconcile.

Also on March 21, 2025, plaintiff filed a motion wherein he "move[d] this Court for an extension of time to conduct additional limited discovery." By order entered March 24, 2025, the court denied the motion, stating:

5

> The scheduling order entered September 24, 2024, required the completion of discovery by December 19, 2024. **Granting the motion to extend discovery would require a delay of the trial set for March 27, 2025.**… In any event, plaintiff will have the opportunity at trial to establish this evidence that he says exists and prove that defendant knowingly and fraudulently made a false oath or account by listing the vehicle as an asset. **Additional discovery regarding the vehicle at this late date, however, is unwarranted and prejudicial**. [Emphasis supplied.]

The court's statement that granting an extension of the discovery deadline "at this late date" would be "unwarranted and prejudicial" because doing so "would require a delay of the trial set for March 27, 2025," reiterated the trial would commence as set forth in the scheduling order.

In addition to plaintiff's actions prior to the March 27 trial date, plaintiff's actions and inactions after entry of the March 27 dismissal order also indicate that plaintiff was under no misconception of the trial date. Rather than file a document concerning the dismissal of his complaint, plaintiff instead filed on April 3, 2025, two documents, the first titled "Creditor's Motion To Convert Case to Chapter 13 Due to Fraudulent Misrepresentations, For Imposition Of Sanctions, And For Supervised Repayment of Judgment Debt," and the second titled "Plaintiff's Objections To The Amended Schedules." The court entered an order that same day which provided:

> **After the pro se plaintiff failed to appear for the trial of this adversary proceeding on March 27, 2025, the court dismissed his complaint** asserting various claims for nondischargeability under 11 U.S.C. § 523(a)(2) and (6), objections to discharge under 11 U.S.C. § 727(a), injunctive relief under 11 U.S.C. § 105(a), and dismissal of the bankruptcy case under 11 U.S.C. § 707. [Emphasis supplied.] …. Concerning the motion, 11 U.S.C. § 706(c) provides that a chapter 7 case may be converted to chapter 13 only if "the debtor requests or consents to such conversion." Regarding the objection, contrary to his argument, the amendments in no way prejudice the plaintiff. Defendant's debt to plaintiff has been discharged, and the chapter 7 trustee has no assets to distribute to creditors. Striking the amended schedules as sought by plaintiff will not change these facts. For these reasons, the motion is denied, and the objection is overruled.

At this point, after having been notified of the dismissal of his complaint by two orders entered within seven days after the trial date, plaintiff did not take any action to seek reinstatement of the complaint. A month passed before plaintiff filed another document, but even this document did not seek relief from the dismissal order. Instead, plaintiff filed on May 8, 2025, a "Motion For

6

Limited Discovery Regarding Amended Statement of Financial Affairs" requesting "limited discovery into Debtor's amended filings (Doc. 28) due to material inconsistencies suggesting fraudulent concealment." The court denied plaintiff's motion the same day. Altogether, plaintiff filed three separate documents over a period of 42 days after the dismissal of his complaint. Nowhere in those documents was there any mention of plaintiff having been confused about the trial date. Only after the court denied plaintiff's alternative avenue of seeking repayment of the debt by conversion of the underlying bankruptcy case to chapter 13, did plaintiff seek reconsideration of the order of dismissal.

B. <u>Fed. R. Civ. P. 60(b)(1).</u> Rule 60(b)(1) provides for relief from a final judgment in the event of "mistake, inadvertence, surprise, or excusable neglect." Relying on Rule 60(b)(1), plaintiff argues he should be entitled to relief from the dismissal order due to "excusable neglect" in that he was unaware of the trial date and experienced an "ECF Malfunction." The Sixth Circuit has explained excusable neglect in the context of a bankruptcy case as follows:

> Congress did not define excusable neglect when it drafted the Federal Rules of Bankruptcy Procedure, prompting the Supreme Court to conclude that the determination of what constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'Ship.*, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). But bankruptcy courts are not completely adrift. In *Pioneer*, the Supreme Court identified factors to consider in determining whether a party has shown excusable neglect, including: "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Since the Court decided *Pioneer*, we have considered excusable neglect in different contexts and repeatedly underscored that it is a difficult standard to satisfy. *Nicholson v. City of Warren*, 467 F.3d 525, 526 (6th Cir. 2006) ("Excusable neglect has been held to be a strict standard which is met only in extraordinary cases."); *see also Proctor v. N. Lakes Cmty. Mental Health*, 560 F. App'x 453, 458 (6th Cir. 2014); *Marsh v. Richardson*, 873 F.2d 129, 130 (6th Cir. 1989).

*In re Edwards*, 748 F. App'x 695, 698 (6th Cir. 2019); *and see Id*. at 699 ("This court has repeatedly described the first *Pioneer* factor as the risk of prejudice to the <u>non-moving</u> party." [Emphasis supplied.]).

7

Of the factors described in *Pioneer*, "the reason for the delay" carries the most weight. *United States v. Munoz*, 605 F.3d 359, 372 (6th Cir. 2010) (quoting *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000)). While other factors are relevant in close cases, "the reason-for-delay factor will always be critical to the inquiry." *Id.* To satisfy this most critical *Pioneer* factor, plaintiff offers two "reasons" he did not appear for trial. First, plaintiff states he was not notified of the trial date. Second, plaintiff states he experienced an ECF malfunction. Neither of these assertions is supported by the record. As such, this most critical *Pioneer* factor weighs very heavily against plaintiff.

Plaintiff was notified of the trial date as he participated in the scheduling conference where the trial date was set, and he received a copy of the scheduling order setting the case for trial. No party requested a continuance or "adjournment" of the trial date, and none was granted. Because the trial date never changed, no notice of a new trial date was ever issued. On the date of trial, defendant and his counsel were present and ready to proceed. Only plaintiff failed to appear.

Perhaps plaintiff misunderstood the nature of defendant's January 27 motion to extend the deadline for filing dispositive motions. Perhaps plaintiff thought the court's granting of that motion had affected a change in the trial date. Even if that were so, plaintiff's actions in response were under his reasonable control and should have included contacting the clerk of court to inquire as to whether the trial date had changed. He did not. Conversely, plaintiff's actions immediately before the trial date in filing a pretrial statement and a motion to extend discovery and his actions after the trial date in asking for relief from the dismissal order only after filing several documents seeking other avenues to overcome the discharge of his debt and finding those avenues closed, indicate that plaintiff was well aware that the trial date had not changed.

In *Snyder v. Shenendehowa Cent. School Dist.*, 244 F.R.D. 152 (N.D.N.Y. 2007), the plaintiffs mistakenly assumed that because discovery had been extended, the trial date in the scheduling order would be changed. After the court canceled the trial and dismissed the case for failure of the plaintiffs to comply with the scheduling order in filing pretrial submissions, plaintiffs pled excusable neglect. In denying the Rule 60(b)(1) motion, the court held that "Plaintiffs' excuse that they assumed the Court would change the trial date and submission date is not

8

excusable. It is the duty of the parties to ensure that they know the deadlines for submissions and the date of trial." *Id.* at 155 ("[F]ailure to follow the clear dictates of a court will not generally be excusable neglect.") (citing *Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997)). This court likewise finds that any assumption by plaintiff that the trial would be rescheduled was unfounded.

That plaintiff is pro se also provides no leniency in this respect. The Sixth Circuit has provided the following guidance with respect to pro se litigants' adherence to deadlines:

> [W]hen a pro se litigant "fails to comply with an easily understood court-imposed deadline, there is no basis for treating that party more generously than a represented litigant." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). And specifically in the context of excusable neglect, we have said that "ignorance of the rules or mistakes in construing the rules," even by those without counsel, is not necessarily excusable. *Nicholson*, 467 F.3d at 527.

*In re Edwards,* 748 F. App'x at 700. Under the circumstances, plaintiff's claim that he was unaware of the trial date is not credible and does not constitute grounds for excusable neglect under *Pioneer's* "reason-for-delay" factor.

Plaintiff also did not experience an "ECF Malfunction." Plaintiff states "[t]he Court is aware of Plaintiff's ECF notification issues." The court is not. Plaintiff is ineligible to be and never has been a Registered User of the court's ECF system. Because plaintiff does not receive notices through the ECF system, it was impossible for plaintiff to have experienced a malfunction of the ECF system or to have had an electronic notification issue that gave him reason to think the trial was not to proceed as scheduled. Plaintiff casting blame on the court's ECF system for his failure to appear for trial is nonsense. The scheduling order and every other order mentioned above were sent to plaintiff at the address he provided to the court, "Vladimir R Kruglyak, 1216 Windsor Avenue, Bristol, TN 37620-2053." Certificates docketed for each of the orders evidence service on the plaintiff by United States mail, first class postage prepaid. None of the orders mailed to plaintiff were returned as undeliverable. Plaintiff's claim that an "ECF Malfunction" was responsible for his failure to appear at trial is not credible and does not constitute grounds for excusable neglect under *Pioneer's* "reason-for-delay" factor.

9

The other *Pioneer* factors likewise do not fall in plaintiff's favor. The length of delay and its potential impact on this proceeding weigh against granting plaintiff relief from the dismissal order. A period of 50 days passed between plaintiff's failure to appear for trial and the filing of the present motion. During this time plaintiff moved the court to convert the underlying bankruptcy case, objected to amended schedules, and sought to take discovery concerning an amended statement of financial affairs. Plaintiff offers no reason for choosing these alternative routes over seeking relief from the dismissal order. The delay certainly impacted this judicial proceeding. Defendant and his attorney were ready to proceed with trial, having prepared and traveled to Greeneville. The court and staff had made plans for a day of trial, setting aside other work in preparing. The court expended a large amount time trying to understand and evaluate the nature of the claims contained in the lengthy and unartfully drafted complaint, all to plan a trial that would perhaps minimize the anticipated difficulties plaintiff would experience in representing himself. The negative impact of the delay continued after the trial during which time the court addressed the plaintiff's three additional filings preceding the present motion. Those filings were an attempt by plaintiff to carry on his quest to avoid the discharge of his debt that would have otherwise been foreclosed had the trial been conducted.

The danger of prejudice if the court were to set aside the dismissal order is significant. Defendant has received a discharge, notice of which was provided to creditors and made available to the public, including credit reporting agencies. If the dismissal order were set aside and the complaint reinstated, the discharge order entered March 27, 2025—which is now final—would have to be vacated. Doing so would detrimentally affect the defendant who already was forced to wait over a year for his fresh start while plaintiff's objections to discharge were pending. Vacating the discharge could also prejudice other entities that may have relied on its entry in extending new credit to defendant. At a minimum vacating the discharge would sow confusion. *See, e.g., In re Wellington*, No. 1:21CV74, 2021 WL 4147776, at *3 (M.D.N.C. Sept. 13, 2021) (danger of prejudice to non-movants, including creditors, may be considered).

Finally, considering whether plaintiff has proceeded in good faith, it is profound that plaintiff has not admitted any neglect or accepted any responsibility for failing to appear for the trial. The blame is thrust entirely on the defendant for having "requested adjournment due to

10

weather," on the court for not providing to plaintiff "notice of the new date" for the trial, and on a "malfunction" of the court's ECF system. In contrast, the following facts are indisputable from the record: plaintiff was on notice of the March 27 trial date, no request to adjourn the trial was made, no new trial date was set, and the plaintiff could not have experienced an "ECF Malfunction" because he was not an ECF Registered User. Evidence of good faith depends on plaintiff having a plausible reason to think otherwise of the record. He did not.

To conclude that plaintiff exercised good faith would require the court to (1) overlook plaintiff's knowledge that defendant's motion to extend the deadline did not ask for the trial to be adjourned and the order granting the extension left no impression it would be, (2) disregard plaintiff's actions and inactions both before the trial and after entry of the dismissal order indicating that plaintiff was under no misconception about the date of the trial, and (3) condone plaintiff's impossible attribution of blame on ECF problems. The court is unwilling to do so. The scheduling order setting the trial was plain and unambiguous. Nothing transpired after its entry to raise any question that the trial date had changed. Plaintiff's decision to ignore the trial date in the scheduling order had consequences.

Although plaintiff now claims his failure to appear at trial was the result of excusable neglect, it is more likely that plaintiff intentionally chose not to appear at trial because he believed he could not successfully prosecute his complaint. Plaintiff's complaint lacked factual allegations to support his claims from the outset. Then, shortly before the trial, plaintiff was denied summary judgment on his claim under § 523(a)(6)—that the damage to plaintiff's rental property was attributable to a "willful and malicious injury" by defendant—because defendant's sworn testimony laid bare plaintiff's allegations. Plaintiff was also facing defendant's assertion that plaintiff's § 523(a)(2) claim—that the debt owed to him was obtained by "false pretenses, a false representation, or actual fraud"—was not substantially justified, along with defendant's demand for an award of his attorney's fees pursuant to § 523(d). And then, just a few days before trial, the court entered an order denying plaintiff's motion for additional discovery holding that plaintiff's assertions about defendant's vehicle and its ownership at the time of the bankruptcy were irrelevant to plaintiff's § 523(a)(2) claim. Whatever the reason for plaintiff's decision not to appear for the duly noticed trial, plaintiff's conduct exhibits a reckless disregard for this

11

proceeding and such culpability prevents him from showing excusable neglect under Rule 60(b)(1). *See In re Trans-Indus., Inc. (Allard v. Q Tech. Inc.)*, No. 08-14655, 2009 WL 1259991, at *7 (E.D. Mich. May 1, 2009) (citing *Shepard Claims Serv., Inc. v. William Darrah & Assocs.,* 796 F.2d 190, 194 (6th Cir. 1986) and *Williams v. Meyer,* 346 F.3d 607, 613 (6th Cir. 2003))." ("A party's conduct is culpable if it is motivated by an intent to thwart judicial proceedings, or shows a reckless disregard for the effect of the movant's conduct on those proceedings."). The court concludes that no grounds for relief under Rule 60(b)(1) exist, whether based on mistake, inadvertence, surprise, or excusable neglect.

### III.

Plaintiff raises two other matters in his motion: revocation of the defendant's discharge and conversion of the case to chapter 13. Plaintiff has filed motions making both of these requests previously and both requests have previously been denied. Plaintiff filed a motion to revoke defendant's discharge in the underlying bankruptcy case. The court entered an order on May 23, 2025, denying plaintiff's motion on procedural grounds because it was not sought by filing a separate adversary proceeding. Just as the plaintiff cannot file a motion for revocation of the defendant's discharge in the underlying bankruptcy case, the plaintiff cannot file a motion for revocation of the defendant's discharge within an adversary proceeding after the complaint commencing the action has been dismissed. A complaint for revocation of discharge is an adversary proceeding that must be commenced by the filing of a properly captioned complaint and payment of a $350 filing fee. *See* Fed. R. Bankr. P. 7001(d); 28 U.S.C. § 1930 (misc. fee schedule ¶6). Thus, plaintiff's renewed attempt for revocation of the defendant's discharge will be denied.

Plaintiff also previously filed a motion for conversion to chapter 13 in this adversary proceeding. The court denied plaintiff's motion by order entered April 3, 2025, stating that "11 U.S.C. § 706(c) provides that a chapter 7 case may be converted to chapter 13 only if 'the debtor requests or consents to such conversion.'" Defendant has done neither. Plaintiff's reliance on *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 127 S. Ct. 1105 (2007), in support of his motion is misplaced. *Marrama* holds that a <u>debtor</u> may forfeit <u>his right</u> to convert a chapter 7 case to a case under chapter 13. *Marrama* does not provide plaintiff with a basis to request that plaintiff's

chapter 7 case be converted to chapter 13 without the debtor's consent. The April 3 order denying plaintiff's motion to convert defendant's bankruptcy case is final and not subject to appeal. Thus, plaintiff's renewed attempt at conversion will be denied.

IV.

In conjunction with the filing of this memorandum opinion, an order will be entered denying plaintiff's motion in its entirety

# # #